BANCO SURINVEST, S.A., a foreign bank, Plaintiff,

v.

SUNTRUST BANK, Atlanta, a national bank; the Collins Brokerage Company, LLC, a Georgia limited liability company; and Allan D. Collins, Defendants.

Civil Action No. 1:99–CV–1736–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 8, 1999.

John Anthony Christy, Debra A. Wilson, Schreeder, Wheeler & Flint, Atlanta, GA, for plaintiff.

Daniel James King, Atlanta, GA, Bruce McCord Edenfield, William Emery Gray, II, Gray, Hedrick & Edenfield, Atlanta, GA, for defendants.

### ORDER

STORY, District Judge.

Plaintiff Banco Surinvest, Inc., S.A. ["Banco"] financed an international trade of Argentine peanuts to an American peanut broker and brings this action to recover amounts it has yet to collect from the broker. Before the Court are Defendant SunTrust's Motion to Dismiss [9–1], Plaintiff's Motion to Dismiss Counterclaims [13–1], and Defendant SunTrust's Motion to Stay Discovery [18–1]. After reviewing the entire record and considering all arguments of the parties, this Court enters the following Order.

### I. Factual Background

#### A. Banco's Complaint Allegations

Taking all allegations of the Complaint as true, the facts are as follows. Plaintiff Banco Surinvest, S.A. ["Banco"] is a Uruguayan bank that financed the trade of peanuts from Argentine peanut grower and exporter Herbert A.H. Behrens, S.R.L. ["Behrens"] to Defendant The Collins Brokerage Company, LLC ["Collins Brokerage"], a Fulton County, Georgia brokerage firm. (*Id.* ¶¶ 1, 11–13.) Banco financed the trade by first advancing Behrens a sum based on the total value of the trade, and, in exchange, Behrens assigned Banco its ownership rights to the shipments and its right to payment for the same. (*Id.* ¶¶ 14–16.) Banco engaged Defendant SunTrust Bank, Atlanta ["SunTrust"] to act as the collecting bank and forwarded to SunTrust documentary drafts, called Remittances for Collection and/or Acceptance ["Remittances"], together with documents that, when delivered to Collins Brokerage, transferred title to the peanuts from Behrens. (*Id.* ¶ 15.)

By way of the Remittances, Banco instructed SunTrust as follows:

DOCUMENTS TO BE DELIVERED TO DRAWEE "IN TRUST" AGAINST A DULY SIGNED "TRUST RECEIPT" AND COMMITMENT LETTER TO MAKE PAYMENT ONCE GOODS APPROVED.

PLEASE CONFIRM BY TELEX/SWIFT DATE OF RECEPTION OF DOCUMENTS AND DATE OF PRESENTATION OF SAME TO DRAWEE.

REMARK: IN ALL CASES FINAL BENEFICIARY OF YOUR PAYMENTS MUST BE BANCO SURINVEST S.A.—MONTEVIDEO. THESE INSTRUCTIONS BY NO MEANS CAN BE DISREGARDED.

(*Id.* ¶ 17, Ex. A.) Banco submitted to SunTrust seven Remittances totaling $1,186,830.00 from April to September 1998. (*Id.* ¶ 18.) Pursuant to Banco's instructions, Collins Brokerage executed a Trust Receipt and Commitment Letter in connection with each Remittance whereby it promised to pay the full amount of the invoice for each shipment of peanuts. (*Id.* ¶¶ 19, 20.) SunTrust released the title documents for each shipment to Collins Brokerage in exchange for each Trust Receipt and Commitment Letter it received. (*Id.* ¶ 21.) Collins Brokerage resold the peanuts to a third party and transferred title of the peanuts to the same, but never remitted full payment to Banco, leaving a balance due of $417,121.03. (*Id.* ¶¶ 22, 25.)

## B. Counterclaims by Collins Brokerage and Allan Collins

The Collins Entities bring counterclaims against Banco for slander and tortious interference with business relations. In support of their slander counterclaim, The Collins Entities allege Banco's South American representatives "engaged in a pattern of making slanderous and/or defamatory statements . . . to numerous customers of The Collins Entities disparaging the integrity of the Collins Entities, which has proximately resulted in a loss of the Collins Entities [sic] credibility . . . and has damaged the[ir] reputations . . . in the Argentinean market and around the World." (Countercl.¶ 9.) The tortious interference with business relations counterclaim hinges on the allegation Banco made these slanderous statements "with the intent to injure The Collins Entities by illegally and wrongfully inducing third parties not to enter into or continue business relationships with The Collins Entities, for which The Collins Entities have proximately suffered financial injury . . . ." (Countercl.¶¶ 11, 12.)

## II. Discussion

Federal Rule of Civil Procedure 12(b)(6) (1999) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may only look to the pleadings. Fed. R. Civ. Pro. 12(b). The Court must construe the pleadings broadly, accepting all facts pleaded therein as true and viewing all inferences in a light most favorable to the nonmoving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## A. SunTrust's Motion to Dismiss

Underlying Banco's negligence and contract claims is the contention SunTrust violated duties imposed by provisions of the parties' contract, the International Chamber of Commerce's Uniform Rules for Collections as detailed in ICC publication number 522 ["URC 522"], and Georgia's Commercial Code, O.C.G.A. §§ 11–4–501–504 (Supp.1999). SunTrust allegedly did so by (1) failing to procure payment in full and failing to perfect security interests in the shipments before delivering the title documents, (2) allowing Collins Brokerage to draft and sign inadequate trust receipts and commitment letters, and (3) failing to monitor Collins Brokerage's payments and notify Banco when Collins Brokerage did not pay the Remittances in full. (Compl.¶¶ 24a–q.) Neither the contract, URC 522, nor Georgia law imposed upon SunTrust any duties to perform the aforementioned tasks, however, and Banco's breach of contract and negligence claims must be dismissed.

### 1. No Duty to Procure Payment in Full or Perfect Security Interests Before Delivering Title Documents

██ Because Banco never instructed SunTrust to perfect a security interest or accept payment in full before transferring the title documents, SunTrust had no contractual duty to perform these tasks. The Remittances contain the only express terms of Banco's contract with SunTrust and therein Banco instructs SunTrust to deliver the title documents to Collins Brokerage "in trust against a duly signed 'trust receipt' and commitment letter to make payment once goods approved," informing Banco of the delivery date by telex. (Compl.¶ 17, Ex. A.) Banco acknowledges in the Complaint SunTrust followed these instructions. (*Id.* ¶¶ 19–21, Ex. A.) No alleged written or oral term of the contract required SunTrust to perfect a security interest in the peanuts or demand payment in full before transferring

title to Collins Brokerage. The facts alleged in the Complaint therefore do not support the claim SunTrust breached the contract or exceeded the bounds of reasonableness by failing to perform these tasks.

■ It is incorrect to argue SunTrust reasonably should have looked beyond the contract and performed these tasks on its own volition without any instruction from Banco. Indeed, Article 4a of URC 522 instructs collecting banks to act only upon the instructions given by the remitting bank, and the comments to this section warn banks to "not look elsewhere for instructions." *ICC Uniform Rules for Collection—A Commentary* at 13 (1995). In addition, article 4b specifically states collecting banks have no duty to alter in any way the remitting bank's terms for payment and delivery of title documents, which is exactly what SunTrust would have done by conditioning transfer of title to Collins Brokerage on payment in full or the creation and procurement of security interests beyond those created by the trust receipts and commitment letters.

Article 19(b) also supports the conclusion SunTrust had no duty to demand payment in full before transferring the title documents. This article provides as follows:

> In respect of documentary collections, partial payments will only be accepted if specifically authorised [sic] in the collection instruction. However, unless otherwise instructed, the presenting bank will release the documents to the drawee only after full payment has been received, and the presenting bank will not be responsible for any consequences arising out of any delay in the delivery of documents.

SunTrust was "otherwise instructed" to release the title documents before receiving full or even partial payment.

**2. No Liability for the Allegedly Inadequate Trust Receipts and Commitment Letters**

■ Pursuant to article 8 of URC 522, SunTrust had no duty to ensure the trust receipts and commitment letters furnished by Collins Brokerage were legally sufficient. This article provides as follows:

> Where the remitting bank instructs that either the collecting bank or the drawee is to create documents (bills of exchange, promissory notes, trust receipts, letters of undertaking or other documents) that were not included in the collection, the form and wording of such documents shall be provided by the remitting bank, otherwise the collecting bank shall not be liable or responsible for the form and wording of any such document provided by the collecting bank and/or the drawee.

Because Banco did not include in the collection the form and wording of the trust receipts and commitment letters, article eight relieves SunTrust of any responsibility for the form and wording of the documents it allowed Collins Brokerage to use.

**3. No Duty to Monitor Payments and Notify Banco When Collins Brokerage Did Not Pay the Remittances in Full**

Finally, Banco alleges SunTrust failed to perform duties imposed by the contract, Article 26 of URC 522, and O.C.G.A. §§ 11–4–501–504 to monitor Collin's Brokerage's payments under the trust receipts and commitment letters and promptly notify Banco if Collins Brokerage failed to pay its debt in full. The Court disagrees and, for the reasons given below, dismisses this aspect of Banco's contract and negligence claims as well.

First, Banco never alleges either an oral or written contractual provision obligating SunTrust to monitor Collins Brokerage's payments under the trust receipts and commitment letters. The Court thus finds SunTrust had no duty to perform this task.

Second, although notice provisions in the contract, URC 522, and Georgia's Commercial Code required SunTrust to notify Banco promptly in the event of dishonor, no dishonor occurred to trigger these notice provisions. The contract instructs SunTrust to provide Banco with notice of

dishonor by cable. Article 26(c)(III) of URC 522 provides that, in the event of dishonor by non-payment and/or non-acceptance, the collecting bank must send notice without delay so the remitting bank may give instructions as to the further handling of the title documents. O.C.G.A. §§ 11-4-501-504 imposes similar duties upon presenting banks in the event of dishonor by · non-acceptance or non-payment.

 Because Collins Brokerage accepted each set of documentary drafts by executing the title receipts and commitment letters, accepting delivery of the title documents, and accepting each peanut shipment, Banco must contend Collins Brokerage's subsequent failure to pay these debts in full constitutes dishonor of the documentary drafts. The contract does not describe when honor or dishonor occurs, but article 26 of the URC 522 and O.C.G.A. §§ 11-4-501-504 lead this Court to conclude Collins Brokerage honored the documentary drafts by executing the trust receipts and commitment letters, accepting the title documents from SunTrust, and accepting the peanut shipments. Both provisions contemplate delivery of title documents upon acceptance and/or payment, and the Court construes these provisions "to mean that a draft is honored when it is delivered for acceptance and is accepted, and that payment is not necessarily required in order for a draft to be honored." *See Gathercrest Ltd. v. First American Bank & Trust,* 649 F.Supp. 106, 115 (M.D.Fla.1985), *aff'd,* 805 F.2d 995 (1986). Collins Brokerage's subsequent failure to pay debts owed under the trust receipts and commitment letters may constitute default under these loan documents, but the failure to pay a debt after acceptance of the documentary drafts and goods does not amount to dishonor of the documentary drafts.

Even assuming Collins Brokerage's failure to pay its debts in full constitutes dishonor of the documentary drafts, SunTrust could not determine when dishonor occurred because neither the trust receipts

nor the commitment letters contain payment dates or due dates.

## B. Banco's Motion to Dismiss Counterclaims by The Collins Entities

### 1. Slander

The Collins Entities allege Banco's South American representatives "engaged in a pattern of making slanderous and/or defamatory statements ... to numerous customers of The Collins Entities disparaging the integrity of The Collins Entities, which has proximately resulted in a los of The Collins Entities [sic] credibility ... and has damaged the[ir] reputations ... in the Argentinean market and around the World." (Countercl.¶ 9.) Banco argues this claim should be dismissed because (1) The Collins Entities failed to state either the substance or the exact form of the alleged defamatory statements and thus failed to plead the claim with particularity as Georgia law requires, and (2) Banco is not liable for slanderous statements made by its employees. The Court disagrees with both arguments and finds The Collins Entities have sufficiently stated a claim for slander.

 "While [Georgia] law determines the elements of a defamation claim, federal law [specifically, Rule 8(a)(2), Federal Rules of Civil Procedure] supplies the standard for pleading that claim." *Gould v. Sacred Heart Hosp. of Pensacola,* No. PCA 86-4392-RV, 1998 WL 995313, at *16 (N.D.Fla. June 29, 1998) (citing *Caster v. Hennessey,* 781 F.2d 1569, 1570 (11th Cir. 1986)). Some courts have adopted a stringent approach and required defamatory remarks to be stated verbatim in the complaint, but in the Eleventh Circuit the test remains "whether the allegation gives the defendant 'fair notice of the plaintiff's claim and the ground upon which its rests.'" *Id.* (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. at 103). Applying this standard, the Court concludes The Collins Entities have sufficiently pled a slander coun-

terclaim because the allegations notify Banco of the grounds upon which it rests.

 Banco points out an employer is not liable for an employee's slanderous statements unless it expressly directs or authorizes the employee to make the remarks. *Lepard v. Robb,* 201 Ga.App. 41, 42, 410 S.E.2d 160 (1991). But The Collins Entities allege Banco "expressly ordered and directed the publication" of the alleged slanderous statements, and dismissal on this ground is therefore unwarranted.

## 2. Tortious Interference with Business Relations

The Collins Entities allege Banco employees made slanderous statements "with the intent to injure The Collins Entities by illegally and wrongfully inducing third parties not to enter into or continue business relationships with The Collins Entities, for which The Collins Entities have proximately suffered financial injury . . . ." (Countercl.¶¶ 11, 12.) To prevail on a claim for tortious interference with contractual relations, a claimant must show the defendant (1) acted improperly and without privilege, (2) acted purposefully and with malice with the intent to injure, (3) caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff, and (4) by tortious conduct proximately caused damage to the plaintiff. *Sowell v. Blackman,* 236 Ga.App. 705, 708, 512 S.E.2d 713 (1999). All of these elements will be satisfied if The Collins Entities can show Banco employees made defamatory remarks to current or potential Collins Brokerage customers for the purpose of discouraging them to conduct business with The Collins Entities and that they succeeded. The allegations thus sufficiently plead these elements, and Banco's motion to dismiss this counterclaim is denied.

## C. Motion for More Definite Statement

Without a more specific description of the alleged slanderous statements, however, Banco cannot frame a meaningful responsive pleading. The Court therefore grants Banco's Motion for More Definite Statement and, pursuant to Rule 12(e), orders The Collins Entities to file their counterclaim amendments within ten days of the date this Order is docketed.

### III. Conclusion

For the foregoing reasons, Defendant SunTrust's Motion to Dismiss [9–1] is **GRANTED,** Plaintiff's Motion to Dismiss Counterclaims [13–1] is **DENIED,** Defendant SunTrust's Motion to Stay Discovery [18–1] is **DENIED AS MOOT,** and Plaintiff's Motion for More Definite Statement is **GRANTED.** The Collins Entities must file their amended counterclaim allegations within ten days of the docketing of this Order.